UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

L. T. TUCKER #132271,                                  Case No. 2:19-cv-00175

        Plaintiff,                                  Hon. Gordon J. Quist
                                                  U.S. District Judge
    v.

D. CONNOR, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

**I. Introduction**

This is a civil rights action brought by state prisoner L. T. Tucker pursuant to 42 U.S.C. § 1983. Tucker claims that Defendants – Registered Nurse (RN) Connor, Corrections Officer (CO) Mankee, and Sergeant (Sgt) – violated his rights under the First , Eighth and Fourteenth Amendments.

This report and recommendation addresses, first, Plaintiff Tucker's motion to amend his complaint (ECF No. 55) and, second, the Defendants' motion for summary judgment, which asserts that Tucker failed to exhaust his administrative remedies (ECF No. 24).

The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court deny Tucker's motion for leave to amend his complaint, and grant in part and deny in part, Defendants' motion for summary judgment. Specifically, the undersigned recommends dismissing all claims against

Mankee and Kautz, and all claims against Connor except for Tucker's retaliation claim against Defendant Connor arising out of the issuance of a misconduct ticket for insolence on July 10, 2019.

## II. Summary of Tucker's Allegations

In Tucker's original complaint, he explains that he takes the prescribed medicine Neurontin for diabetic peripheral neuropathy. (ECF No. 1, PageID.3.) Tucker alleges that, on July 10, 2019, RN Connor gave him a cup of water instead of giving him a cup with his medicine. Tucker says that, after he threatened to file a grievance against Connor, she told him she would write him up for arguing before he could grieve her. (*Id.*, PageID.4.) Tucker attached a copy of a misconduct ticket that Connor wrote on him that day.[1] (*See* ECF No. 1-2, PageID.24.) Tucker alleges that all three Defendants agreed to take this retaliatory action against him.

Tucker also appears to allege a violation of his rights under the equal protection clause of the Fourteenth Amendment. He says that, on June 22, 2019, a white prisoner complained about his medications, but did not receive a misconduct ticket. (ECF No. 1, PageID.6.) Tucker asserts that he received the misconduct ticket on June 10, 2019 due to his race. (*Id.*)

In addition, Tucker says that he Defendants threatened him with physical injury on July 10, 11, 16, 19, 23, 2019. (*Id.*, PageID.8-9, 11.)

---

[1] According to documents Tucker attached to his complaint, Tucker was found not guilty of the charge of insolence on June 16, 2019. (ECF No. 1-3, PageID.25.) The hearing officer explained that a prisoner may write a grievance on a staff member when the prisoner believes an injustice has taken place. The hearing officer dismissed the charge of insolence. (*Id.*)

2

### III. Plaintiff's Amended Complaint

On January 31, 2020, after Defendants filed their summary judgment motion raising the issue of exhaustion of administrative remedies, Tucker filed a motion to amend his complaint to add Eighth Amendment claims and state law claims. (ECF No. 55.)

Tucker's original complaint already included factual allegations that appear to assert Eighth Amendment violations. Tucker clearly alleged in his original complaint that he was denied medications for neuropathy, pain, and diabetes during July 2019. In addition, Tucker asserted an equal protection claim in his original complaint by alleging that he was treated differently than a similarly situated white prisoner.

The only new claims that Tucker attempts to raise in his amended complaint are state law claims of gross negligence and "intentional torts." However, Tucker makes no effort to explain a legitimate factual or legal basis for his gross negligence or "intentional torts" allegations. (*Id.*, PageID.354-355.)

Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, "a party must act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension and Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995). The court may deny leave to amend a complaint where the amendment is brought in bad faith, will result in undue delay or prejudice to the opposing party, or is futile. *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995), *cert. denied*, 116 S. Ct. 1354 (1996). The court must have knowledge

of the substance of the proposed amendment to determine whether "justice so requires" an amendment. *Roskam Baking Co v. Lanham Machinery*, 288 F.3d 895, 906 (6th Cir. 2002).

Tucker asserts that he only intended to raise a retaliatory false misconduct claim against Defendants in his original complaint. (ECF No. 87, PageID.679.) Tucker makes this argument because he concedes that he failed to exhaust any other claim prior to filing his lawsuit. Tucker now wants to add new claims that he argues were exhausted after he filed his complaint in this action.

First, Tucker's amended complaint is unnecessary. The only new claims are state law claims that are not fully explained or developed. Tucker attempts to bring a gross negligence claim, but fails to explain how any Defendant's conduct rose to gross negligence. In addition, Tucker makes up a claim entitled "intentional torts" which is not a cause of action, but a category of potential legal claims. Tucker makes no effort to explain this claim.

The proposed amended complaint adds nothing new that is actionable. Tucker may have filed this motion for leave to amend his complaint to defeat Defendants' motion for summary judgment. However, that attempt is a futile one. Tucker was aware of his Eighth Amendment claims at the time he filed his original complaint and raised factual allegations that could support an Eighth Amendment claim in his original complaint. Tucker admittedly failed to exhaust his Eighth Amendment claims before he decided to file his complaint in this matter. The PLRA requires prisoners to exhaust their administrative remedies before they file their complaint.

4

*Porter v. Nussle*, 534 U.S. 516, 532 (2002). Even if the Court granted Plaintiff's motion to add an Eighth Amendment claim, that claim would not have been exhausted at the time the complaint was filed.

In the opinion of the undersigned, it is improper to file a motion to amend a complaint asserting claims which relate to factual allegations contained in the original complaint, but that were not exhausted at the time it was filed. To allow such an amendment defeats the PLRA's requirement that prisoners exhaust administrative remedies prior to pursuing relief in the Court. Therefore, it is respectfully recommended that the Court deny Tucker's motion for leave to amend the complaint.

**IV. Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[2] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and

---

[2]   Disputed issues of fact regarding exhaustion under the PLRA may be decided in an evidentiary hearing and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**V. Exhaustion of Administrative Remedies**

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter*, 534 U.S. at 532; *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to

obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id*. at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id*. (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided

7

adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ T, BB. The respondent

8

at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy

9

Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[3], the inmate must first

---

[3] Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules

raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94. If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94. Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and

---

and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

11

should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[4]

## V. Plaintiff's Allegations

Plaintiff's allegations are summarized in the table below.

| Claim | Defendant | Date or Date Range of Incident(s) |
|---|---|---|
| Retaliatory misconduct ticket and equal protection violation | Connor, Mankee, and Kautz | July 10, 2019 |
| Retaliation and Eighth Amendment violations | Connor, Mankee, and Kautz | Various dates in July 2019 |
| Retaliation and Eighth Amendment for refusing to provide medication | Connor | July 19, 2019 |

## VI. Grievances Identified by Defendants

In their motion for summary judgment, Defendants identified three relevant grievances that Tucker filed with the MDOC. They claim that a review of these grievances will demonstrate that Tucker has failed to properly exhaust his administrative remedies. These grievances are summarized below.

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| MBP-19-07-1017-28e | Connor | Refused medication in retaliation for filing grievance. | July 19, 2019 | Denied (ECF No. 5-3, PageID.207.) | Denied (ECF No, 25-3, PageID.205.) | Rejected as untimely (ECF No. 25-3, PageID.203.) |

---

[4] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

12

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| MBP-19-07-0931-28i | nurse | Refused to give medication but gave white prisoner his medication. | July 1, 2019 | Denied as medication was provided in water. (ECF No. 5-3, PageID.212.) | Denied (ECF No. 25-3, PageID.210.) | Rejected for failing to attempt to resolve with staff (ECF No. 5-3, PageID.208.) |
| MBP-19-07-0975-28i | Connor | Refused medication and told Tucker she would write him up. | July 10, 2019 | Denied as medication was provided in water. (ECF No. 5-3, PageID.217.) | Denied (ECF No. 25-3, PageID.215.) | Rejected for failing to attempt to resolve with staff (ECF No. 5-3, PageID.213.) |

## VII. Additional Grievance Identified by Tucker

In his response, Tucker identified one additional grievance he filed with the MDOC. That grievance is summarized below.

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| MBP-19-017-1060-28e | Connor | Walked past cell without providing medication | July 27, 2019 | Denied because Tucker refused to take his medication. (ECF No. 79-3, PageID.661.) | Denied. (ECF No. 79-3, PageID.659.) | Rejected at untimely. (ECF No. 79-3, PageID.657.) |

## VIII. Misconduct Ticket

Tucker alleges that Defendant Connor issued him a retaliatory misconduct ticket on July 10, 2019, for insolence. Tucker's misconduct ticket was dismissed because inmates may file grievances on staff for perceived injustices. Defendants

13

have ignored Tucker's misconduct ticket and the hearing in this motion. This misconduct ticket is summarized below.

| Facts and allegations | Date of Misconduct Report | Date of Misconduct Hearing | Results of Misconduct Hearing |
|---|---|---|---|
| Misconduct ticket issued by Connor for insolence. (ECF No. 1-2, PageID.24.) | July 10, 2015 | July 16, 2019 | Ticket dismissed because a prisoner should not receive a misconduct ticket for writing or threatening to write a grievance. (ECF No. 1-3, PageID.25.) |

### IX. Analysis

Defendants correctly argue that Tucker failed to properly exhaust a grievance against them on each of the issues asserted in this case. Tucker never even named Defendants Mankee or Kautz in his grievance filings. Each of the relevant grievances that Tucker submitted was procedurally rejected. These grievances failed to properly exhaust any claim against any Defendant, including claims against Defendant Connor, who was named in the grievances. Tucker argues that grievance appeals in **MBP-19-07-1017-28e** and **MBP-19-017-1060-28e** were timely placed in the mail at Step III and the rejection based on untimeliness was improper.

The records before the Court show that these grievances were correctly rejected due to Tucker's lack of timeliness. As shown below, Tucker received his Step II response in **MBP-19-07-1017-28e** on September 3, 2019. (ECF No. 25-3, PageID.204.)

14

> **STEP II — Response**
>
> See attached response.
>
> Patricia Lamb — *Patricia Lamb* — 8/28/19
> Respondent's Name (Print) / Respondent's Signature / Date
>
> Date Received by Step II Respondent: AUG 15 2019
> Date Returned to Grievant: 9-3-19

*Id.*

Tucker had 10 days to submit his timely appeal to the Grievance Section. Policy Directive 03.02.130. Thus, Tucker's appeal was due by September 13, 2019. But since his appeal was not received until September 23, 2019, it was properly rejected. The Step III response, which is shown below, explains:

> **Step III Grievance Response**
>
> **L TUCKER**           132271
> **MBP**    19071017
>
> Grievant alleges the Nurse was unprofessional, denied him access to his medication.
>
> In accordance to PD 03.02.130 grievances are to be rejected when untimely. Pursuant to policy, this grievance was untimely filed by the grievant at the Step III appeal. The grievant's Step III appeal was received on September 23, 2019. While providing a grace period for standard mail; the grievance however was still not received in a suitable timeframe after the due date of September 12, 2019.
>
> The grievance tracking number has been changed from MBP-19-07-1017-12E4 to MBP-19-07-1017-28e in order to reflect the grievance category code at Step III.
>
> Grievance rejected.
>
> Response of Bureau of Health Care Services      Date: 10/10/2019

(*Id.*, PageID.203.)

15

Tucker also argues that grievance **MBP-19-017-1060-28e** was timely filed and improperly rejected. However, in addition to failing to properly file this grievance, Tucker filed his complaint in this matter *before this grievance was resolved*. The complaint was filed in September of 2019. The grievance was resolved in November of 2019.

> **Step III Grievance Response**
>
> **L TUCKER**     132271
> **MBP**     19071060
>
> Grievant alleges the Nurse inappropriately denied him access to medication.
>
> In accordance to PD 03.02.130 grievances are to be rejected when untimely. Pursuant to policy, this grievance was untimely filed by the grievant at the Step III appeal. The grievant's Step III appeal was received on October 7, 2019. While providing a grace period for standard mail; the grievance however was still not received in a suitable timeframe after the due date of September 25, 2019.
>
> The grievance tracking number has been changed from MBP-19-07-1060-12E1 to MBP-19-07-1060-28e in order to reflect the grievance category code at Step III.
>
> Grievance rejected.
>
> Response of Bureau of Health Care Services     Date:  11/18/2019

(ECF No. 79-3, PageID.657.)

The records before the Court show that Tucker failed to exhaust this grievance before he filed his complaint. Moreover, Tucker failed to allege in his complaint any conduct against Defendant Connor that occurred on July 27, 2019, which is the asserted incident date in this grievance.

Those points do not, however, end the analysis. Tucker alleges that Defendant Connor issued him a retaliatory misconduct ticket. The proper way to exhaust a

retaliatory misconduct is not though the grievance process, but through the misconduct hearing process. *Siggers*, 652 F.3d at 693-94. It is unclear why Defendants ignore this procedure in their motion.

Tucker claimed during the hearing on his misconduct ticket that he received the insolence ticket only after he threatened to file a grievance on Defendant Connor. In fact, it is undisputed that Defendant Connor gave Tucker the insolence grievance because he threatened to write a grievance on her. A portion of the hearing report on this misconduct ticket is shown below.

> **HEARING REPORT (Do Not Complete If Hearing Waived)**
> **Evidence and/or prisoner statement in addition to misconduct report:** Prisoner attended the hearing and plead not guilty. Prisoner stated he did say he was going to write up the reporting staff member as he felt he was giving water and not his medication.
>
> **Reasons for findings:** The charge of insolence is dismissed, a prisoner can write a grievance on a staff members when they believe that there was an injustice. This is part of the grievance process. I did not find in the report that the reporting staff member described how the prisoners statement was meant to harass or degrade the employee.
>
> **FINDINGS**
> Charge 1  ☐ Guilty  ☐ Not Guilty  ☒ Dismissed  CMIS Code 426

(ECF No. 1-3, PageID.25.) The hearing officer dismissed the misconduct charge because a prisoner may file a grievance on a prison staff member to correct a perceived injustice. Although the hearing officer did not use the term "retaliation" in his analysis, a claim of retaliation is implicit in the ticket. The hearing officer implied that Connor issued the misconduct ticket because Tucker threatened to write a

17

grievance on her. As the hearing officer noted, prisoners are allowed to file grievances to address an injustice. Once the case was dismissed in Tucker's favor, Tucker had no further appeal to file and his retaliatory misconduct claim was exhausted. Accordingly, it is the opinion of the undersigned that Tucker exhausted his retaliation claim against Defendant Connor arising from the alleged false misconduct ticket he received on July 10, 2019.

## X. Recommendation

The undersigned respectfully recommends that this Court dismiss the following claims without prejudice:

1. Tucker's Eighth Amendment and Fourteenth Amendment claims.

2. All claims asserted against Defendants Mankee and Kautz.

3. All claims asserted against Defendant Connor except for the retaliation claim arising from the July 10, 2019, misconduct ticket for Insolence.

If the Court adopts this recommendation, the only claim remaining will be against Defendant Connor for issuing the July 10, 2019, alleged retaliatory misconduct ticket.

Dated: July 24, 2020  /s/ *Maarten Vermaat*
MAARTEN VERMAAT
U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P.

72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).